UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>*ex rel.* EDWARD L. GAGNE )<br>and LINDA JENESKI, )<br>)<br>Relators, )<br>)<br>v. )<br>)<br>CITY OF WORCESTER, )<br>and STEPHEN WILLAND, )<br>)<br>Defendants. )<br>) | Civil Action No.<br>06-40241-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS AND CROSS MOTIONS FOR SANCTIONS**

**SAYLOR, J.**

This is a *qui tam* action alleging the misuse of federal grant funds by the defendant City of Worcester. Relators allege that the City of Worcester has diverted federal funds from their intended use to other city projects and inappropriately co-mingled federal grant funds with other municipal funding in violation of the Work Force Investment Act, 29 U.S.C. § 2832 *et seq*. Relators further contend that the City of Worcester and Stephen Willand, the executive director of the Central Massachusetts Regional Employment Board ("CMREB"), have defrauded, conspired to defraud, and fabricated and submitted false records to the United States government,

all in violation of various provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*[1]

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and for sanctions against the relators. Relators have cross-moved for sanctions against the City of Worcester. For the reasons stated below, defendants' motion to dismiss will be granted, and the cross-motions for sanctions will be denied.

## I.    **Factual Background**

The second amended complaint consists almost entirely of abstract and unspecific conclusions of law, and the few factual allegations are opaque. Nonetheless, it appears that the complaint alleges the following.

Relator Edward Gagne is an employee of the Worcester City Manager's Office of Employment and Training ("CMOET"). Relator Linda Jeneski is a former employee of the same office.

Defendant Stephen Willand was an employee of the City of Worcester and served as the head of the CMOET. Willand also served as (1) the Executive Director of an entity known as the Central Massachusetts Regional Employment Board ("CMREB") and (2) Director of the Worcester "One Stop Provider" (also known as "Workforce Central") established under the Workforce Investment Act, 29 U.S.C. § 2832 *et seq.* ("WIA").

Relators contend that from June 28, 2003, and until at least June 25, 2004, Willand (and several non-party municipal employees) received unlawful compensation from WIA funds. In particular, Willand allegedly received $105,000 in compensation for FY 2004 from WIA funds for "little or no services performed." Willand allegedly also received an automobile worth $15,000 in

---

[1] On June 8, 2007, the government notified the Court of its decision not to intervene in the action.

FY 2004, paid for by WIA funds. Willand and Carlene Bull, a municipal employee, allegedly paid a state tort claim settlement to Gagne in the amount of $130,000 from WIA funds. Willand and other non-party municipal employees also allegedly filled out employee time sheets that "were not based on after-the-fact actual activities" of the employees, and that such hours were charged to the various programs, contracts, grants, and awards of the WIA.

According to the relators, defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, by (1) presenting false or fraudulent claims for payment or approval to the federal government in violation of § 3729(a)(1), (2) making or using false records or statements to make false or fraudulent claims in violation of § 3729(a)(2), and (3) conspiring to get false or fraudulent claims paid or approved by the federal government in violation of § 3729(a)(3).

## II. Standard of Review

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, - - - U.S. - - - , 127 S. Ct. 1955, 1966-67, 167 L. Ed.2d 929 (2007)). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 513 F.3d at 305 *3 (*quoting Centro Medico del Turabo, Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

In reviewing a motion to dismiss for lack of subject matter jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiffs." *Viquiera v. First Bank*, 140 F.3d 12, 16 (1st Cir.

1998).  However, federal jurisdiction is never presumed, and relators have the burden of proving the existence of federal jurisdiction.  *Id.* (*citing Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996)).

### III. Defendants' Motion to Dismiss

Defendants contend that dismissal is warranted because (1) the Court lacks subject matter jurisdiction to hear the FCA claims at issue; (2) the complaint fails to meet the pleading requirements of Fed. R. Civ. P. 9(b); and (3) defendant the City of Worcester was improperly served pursuant to Fed. R. Civ. P. 4.

#### A. Subject Matter Jurisdiction

Defendants contend that this case should be dismissed for lack of subject matter jurisdiction under the "public disclosure" bar of the FCA, 31 U.S.C. § 3730(e)(4)(A)-(B). Specifically, defendants assert that the claims are based upon publicly disclosed transactions, and that relators are not an original source.

> The FCA states in relevant part:
>
> No court shall have jurisdiction over an action under [the FCA] based upon the public disclosure of allegations or transactions in a civil, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless . . . the person bringing the action in an original source of the information.

31 U.S.C. § 3730(e)(4)(A).  The relators carry the burden of proving jurisdiction.  *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995).  In assessing jurisdiction under the public disclosure bar, the Court must examine (1) whether the allegations in relators' complaint were publicly disclosed prior to the filing of plaintiff's action, and (2) whether relators' allegations are based upon that public disclosure.  If the answer to either of the first two inquiries is negative,

then the court has jurisdiction. If, however, the answer to the first two inquiries is affirmative, then the Court must examine whether the relators are an original source of the information in the complaint. *See, e.g., United States ex rel. Rost v. Pfizer, Inc.*, 446 F. Supp. 2d 6, 15 (D. Mass. 2006), *vacated on other grounds*, 507 F.3d 720, 734 (1st Cir. 2007).

For the "public disclosure" bar to apply, an "allegation or transaction" must have been publicly disclosed in one of the sources identified by the statute. *United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir. 1990). To be considered "public," disclosure need not be widespread or reach "all members of the community, but there must be some act of disclosure to the public outside the government." *Rost*, 507 F.3d at 728, 728 n.6 (internal quotation omitted).

In the first amended complaint, which has since been superseded, relators openly and clearly indicated that the information upon which they based their allegations was derived from discovery responses provided by the City of Worcester in prior civil actions, from public records, and from the media. For example, relators stated that "[s]ince approximately 2004, both Relators have been represented by the same counsel which has given each the opportunity under appropriate circumstances to exchange information concerning the operation of the Defendant City Manager's Office of Employment and Training (CMOET) *that now leads to the filing of the instant lawsuit*." First Am. Complt., ¶ 8 (emphasis added). Although the First Circuit has not explicitly addressed the issue, "every court of appeal to have addressed the question has held that any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure . . . for purposes of section 3730(e)(4)(A)." *See United States ex rel. Duxbury v. Ortho Biotech Products, L.P.*, 2008 WL 244304 *1, *4 (D. Mass. 2008) (quoting *United States v. Northrop Corp*, 59 F.3d 953, 966 (9th Cir. 1995)); *In re Pharmaceutical*

*Industry Average Wholesale Price Litigation*, 538 F. Supp. 2d 367, 376-377 (D. Mass. 2008); *see also United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994) (collecting cases); *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 974 (6th Cir. 2005). All references to other litigation have been excised from the second amended complaint.

Defendants further contend that the items relators complain of—salaries of city employees, use of municipal vehicles, and lawsuit settlement proceeds—are all transactions that must be budgeted and/or approved at the local and state level and, as such, are matters of public record. When evaluating a motion to dismiss based on the public disclosure bar of the FCA, the Court may conduct a "broad inquiry" and may consider extrinsic materials, including exhibits attached to the pleadings and the evidentiary materials submitted by the parties. *Hernandez-Santiago v. Ecolab, Inc.*, 397 F.3d 30, 33 (1st Cir. 2005); *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 162-163 (1st Cir. 2007) (explaining the difference between a facial and a factual challenge to a court's subject matter jurisdiction). Here, the defendants have provided no actual evidence to support their claim that the relevant items have been publicly disclosed. As a practical matter, it is almost certainly the case that municipal budgetary information—at least in some general form—is available to the public. The Court is unable, however, to state on this record that all of the *specific* municipal expenditures cited by the defendants are provided to the public in line-item form. The Court is even less certain whether municipal employee time sheets (which apparently are the driving force behind relators' claims) are subject to public disclosure.

Ultimately, the Court is unable to make the FCA jurisdictional determination on the present record. Although ordinarily the Court must address the issue of subject matter jurisdiction first, it may nonetheless evaluate the sufficiency of the pleadings where those issues

6

are intertwined with the jurisdictional analysis.  *See United States ex. rel. Ondis v. City of Woonsocket*, 2008 WL 282274 *1, *1-4 (D.R.I. 2008) (considering sufficiency of FCA claim under Rules 8 and 9(a) even though evidentiary record not sufficient to determine subject matter jurisdiction).  The Court accordingly will turn to the sufficiency of the complaint under Rule 9(b).

### B.     Pleading Requirements

Defendants seek to dismiss the complaint pursuant to Fed. R. Civ. P. 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  This heightened pleading standard requires relators to set forth with particularity the "who, what, when, where, and how of the alleged fraud."  *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 46 (D. Mass. 2001); *see also Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18-19 (1st Cir. 2002).

Rule 9(b) "requires relators to 'provide details that identify particular false claims for payment that were submitted to the government.'"  *Karvelas*, 360 F.3d at 232.[2]  FCA liability attaches only to false claims, not to any "underlying fraudulent activity or the government's wrongful payment."  *Duxbury*, 2008 WL 244304 at *12.  Evidence of an actual false claim is "the *sine qua non* of a False Claims Act violation."  *Karvelas*, 360 F.3d at 225.  As the First Circuit stated in *Karvelas*, a case where a relator alleged that a health care provider submitted false Medicare and Medicaid claims to the federal government:

> [A] relator must provide details that identify particular false claims for payment

---

[2]  The First Circuit has rejected the contention that Rule 9(b)'s heightened pleading standard should be relaxed as to fraud claims brought under the FCA.  *See Karvelas*, 360 F.3d at 231.

> that were submitted to the government.  In a case such as this, details concerning the dates of the claims, the content of the forms or bills submitted, their identification numbers, the amount of money charged to the government, the particular goods or services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on these practices are the types of information that may help a relator to state his or her claims with particularity. These details do not constitute a checklist of mandatory requirements that must be satisfied by each allegation included in the complaint.  However, . . . we believe that some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).

*Id.* at 232-233.  *Karvelas* suggests that Rule 9(b) may be satisfied if "the complaint as a whole is sufficiently particular to pass muster under the FCA, although some questions remain unanswered." *Id.* at 233 n.17.

Nonetheless, even giving relators the "benefit of such flexibility," *Rost*, 507 F.3d at 732, the second amended complaint utterly fails to meet the requirements of Rule 9(b).  Relators allege that various parties, including defendant Willand, received compensation for the fiscal year 2004 "that was unlawfully funded through WIA."  (Complt., ¶¶ 29).  While the fourteen-page complaint is rife with abstract, repetitive, and somewhat incoherent allegations of conspiracy and administrative wrongdoing, relators spend only one paragraph actually addressing alleged false claims:

> During Workforce Central and CMREB Fiscal Year 2004 (FY 2004), and before and after FY 2004, Defendant City's Agents STEPHEN WILLAND, BRUCE DAHLQUIST, DONALD ANDERSON, KEVIN CROWLEY, and CARLENE BULL, among others, with the full knowledge and acquiescence of Defendant City's upper management statutorily responsible for the integrity of WIA federal funds under 29 U.S.C. § 2832 (d)(3)(B)(i)(I), made and caused to be made false, misleading and fraudulent pretenses and representations through periodic reports and requests for funds to the U.S. Department of Labor, U.S. Department of Health and Human Services, and State of Massachusetts based on the allocation of Workforce Central and COMREB employees' time which were not based on after-

>   the-fact actual activities of the employees charged to the various programs, contracts, grants or awards of the Workforce Investment Act. The employee time-sheets are official documents that are issued in compliance with law and required to be maintained to support invoices. In order to accomplish the unlawful funding of WILLAND and DAHLQUIST, capitated funds earned from the welfare activities of Workforce Central were "loaned" to various Workforce Central time accounts to which ANDERSON, CROWLEY, BULL and others would bill their time to free-up Wagner-Peyser Funds so that WILLAND and DAHLQUIST could bill to Wagner-Peyser as specifically prohibited by law. The loans from welfare program earnings were loaned to Department 31S account numbers 224, 228 and 231 and never repaid. Accounts 31S224, 31S228, and 31S231 appear on Anderson and Crowley's time sheets while Wagner-Peyser, which is their legitimate One-Stop overhead, does not. CARLENE BULL is the person responsible for the accounting manipulation.

*Id.* at ¶ 30. The complaint does not specify the exact date or content of any particular false or fraudulent claim. It does not set forth the specifics of even *one* time-sheet that was sent to the government to obtain funding.[3] Three municipal "account numbers" are named, but the complaint provides no context as to what they are or how they relate to any actual claims submitted to the federal government. The general allegations concerning allegedly improper intermingling of federal and state funds and defendant Willand's alleged improper dual employment role are insufficient to cure that deficiency. *See Karvelas*, 360 F.3d at 235 (even given the existence of conduct which may lead to false claims, the court may not assume that such claims inevitably flow from such activities); *United States ex rel. Walsh v. Eastman Kodak Co.*, 98 F. Supp. 2d 141, 147 (D. Mass. 2000) (holding that relator failed to satisfy Rule 9(b) when his complaint did not cite one single false claim arising out of an alleged methodology that conceivably could have produced

---

[3] If, indeed, relators are alleging that the time-sheets were the false or fraudulent claims sent to the government. The Court is unable to discern from the complaint the discrete documents plaintiffs contend actually constituted the alleged false or fraudulent claims.

false claim invoices).[4]  Relators have failed to plead fraud with sufficient particularity, and have not requested leave to amend in the event this Court found the complaint deficient.[5]  The complaint accordingly will be dismissed.[6]

## IV.     Cross-Motions for Sanctions

Both relators and defendants have cross-moved for sanctions.  Rule 11 of the Federal Rules of Civil Procedure authorizes the Court to sanction parties or attorneys who file pleadings, motions, or other papers "for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase in the cost of litigation."  *Simon v. Navon*, 71 F.3d 9, 17 (1st Cir. 1995).  This determination is left to the Court's "considered judgment."  *Id.*

### A.     Relators' Motion

---

[4]  Relators allege violations of §§ 3729(a)(1), (a)(2), and (a)(3) of the FCA, respectively.  The court need not separately analyze Rule 9(b)'s particularity requirements as to each subsection, as the above analysis applies equally to all.  *See Duxbury*, 2008 WL 244304 at *13 n.18; *Rost*, 507 F.3d at 733; *Karvelas*, 360 F.3d at 225 ("Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation . . . The False Claims Act at least requires the presence of a claim – a call upon the government fisc – for liability to attach") (internal quotations and citations omitted); *United States ex rel. McDermott v. Genentech, Inc.*, 2006 WL 3741920 *1, *11 (D. Me. 2006) ("Underlying schemes and other wrongful activities that result in the submission of false claims are included in the 'circumstances constituting fraud or mistake' that must be [pleaded] with particularity pursuant to Rule 9(b)").

[5]  In their response to defendants' motion to dismiss the second amended complaint, relators submitted a four-page response that incorporated, by reference, their earlier opposition to defendants' motion to dismiss the first amended complaint.  The earlier response requested leave to amend the complaint in order to satisfy the pleading requirements of Rule 9(b).

The Court notes that this request to amend *was* granted, and relators accordingly filed a second amended complaint.  The relevant complaints are markedly dissimilar (alleging FCA violations during different periods of time, for example), and the Court is unsure whether relators intended to renew their motion to amend the complaint.  *See Karvelas*, 360 F.3d at 242 (absent exceptional circumstances, a district court has no obligation to invite a plaintiff to amend his or her complaint when the plaintiff has not sought such amendment).  Even if this Court construes the incorporation as renewing the request to amend, the second amended complaint is relators' *third* attempt at pleading a FCA action.  The Court sees no need to provide an opportunity for further amendment.  *See Rost*, 507 F.3d at 733-734 (permissible grounds for denial of leave to amend include repeated failure to cure pleading deficiencies); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

[6]  The Court does not reach the claim of improper service under Fed. R. Civ. P. 4.

The City of Worcester contends that relators failed to serve the second amended complaint upon it pursuant to Fed. R. Civ. P. 4. Relators deem this allegation "outrageous," and contend that Worcester's continued filings in this action (which actively address the contents of relators' second amended complaint) render it vulnerable to service of claims under the "relatively informal" methods of Fed. R. Civ. P. 5. *See Employee Painters Trust v. Ethan Enterprises*, 480 F.3d 993, 999 (9th Cir. 2007). While it is certainly possible that service in this situation is governed by Fed. R. Civ. P. 5(a)-(b), not Fed. R. Civ. P. 4, defendant's contention is not "outrageous" or in any way remarkable within the meaning of Rule 11. Relators' motion will accordingly be denied.

### B.      Defendants' Motion

The City of Worcester has renewed its earlier request for sanctions against relators with respect to the exhibits attached to relators' opposition to defendant's motion to dismiss the first amended complaint. While defendants did move to strike the disputed exhibits, that motion contained no request for sanctions. Defendants' only earlier request for sanctions came in opposition to relators' motion for a preliminary injunction. The Court denied relators' motion and declined to impose sanctions. The Court sees no reason to revisit that decision, and defendants' motion will therefore be denied.

Defendants also request that this Court award attorney's fees and costs in the preparation incurred in bringing this motion. Rule 11 requires that defendants' motion "shall be made separately from other motions." Fed. R. Civ. P. 11(c)(1)(a). When a motion for sanctions is included in a motion to dismiss, the Court is required to deny the motion for failure to comply with Rule 11. *See, e.g., Raffaele v. Marrama*, 164 F. Supp. 2d 224, 228 (D. Mass. 2001). The

motion will therefore be denied.

## V.    Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED.  Relators' motion for sanctions is DENIED.  Defendants' motion for sanctions is DENIED.

 **So Ordered.**

/s/ F. Dennis Saylor              
F. Dennis Saylor IV  
United States District Judge

Dated: June 20, 2008